## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[1] EZEQUIEL PUELLO-MORLA,<br>[2] ROLFI MORLA,<br><br>**Defendants.** | **CRIM. NO. 22-447 (RAM)** |

### OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendants Ezequiel Puello-Morla's and Rolfi Morla's (collectively "Defendants") *Motion to Dismiss Counts One and Two of the Indictment* ("*Motion to Dismiss*" or "*Motion*"). (Docket No. 46). For the reasons set forth below, the Court **DENIES** Defendants' *Motion*.

### I.   BACKGROUND

On September 26, 2022, United States Coast Guard ("USCG") personnel allegedly intercepted a go-fast vessel suspected of drug trafficking, approximately 30-45 miles northwest of Puerto Rico. (Docket Nos. 48 at 2-3 and 46 at 1-2). USCG personnel reportedly pursued the vessel, gained control of it, and then boarded it. (Docket Nos. 48 at 2-3 and 46 at 2). Around the same time, USCG personnel recovered jettisoned bags near the vessel. (Docket No. 48 at 3). Those bags tested presumptively positive for cocaine. Id.

One of the vessel's four occupants identified himself as the master and told the USCG personnel that he, the other occupants, and the vessel all had Dominican Republic nationality. The Dominican Republic government, however, denied registration of the vessel. All four occupants were detained. Id.

On October 13, 2022, a grand jury indicted Defendants for multiple drug-related offenses. (Docket No. 11). Among other offenses, Defendants were charged with possession with intent to distribute of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"). Id. On November 8, 2022, the United States Department of State issued a jurisdictional certificate by USCG Commander Ian M. Starr ("*Certificate of Commander Starr*" or "*Certificate*"). (Docket Nos. 46-1 and 48-2). The *Certificate* states the alleged facts of Defendants' interdiction and asserts United States jurisdiction over their vessel pursuant to 46 U.S.C. § 70502(c)(1) and 18 U.S.C. § 2237(e)(3). Id.

On August 29, 2023, Defendants filed their *Motion to Dismiss the Indictment*, moving for Counts One and Two to be dismissed. (Docket No. 46 at 1). Defendants argue that because the vessel's master claimed Dominican Republic nationality for the vessel, the vessel is not stateless and therefore not subject to United States

Criminal No. 22-447 (RAM)                                                3

jurisdiction. Id. at 3. They also contend that the MDLEA is unconstitutional because it purportedly violates international law and the Due Process Clause. Id. at 7, 11, 14, 20.

The United States filed its *Memorandum of Law in Opposition to the Defendants' Motion to Dismiss the Indictment* ("*Opposition*") on September 14, 2023. (Docket No. 48). The Government argues that Defendants' vessel is subject to United States jurisdiction because it is considered stateless under the MDLEA. Id. at 4, 7. Further, the Government asserts that the MDLEA complies with both international law and the United States Constitution. Id. at 10.

## II.   LEGAL STANDARD

### A. Motion to Dismiss an Indictment

Pursuant to Fed. R. Crim. P. 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Usually, dismissal of an indictment pursuant to Rule 12(b) is "reserved for extremely limited circumstances" because it "directly encroaches upon the fundamental role of the grand jury." Whitehouse v. U.S. Dist. Ct. for the Dist. of R.I., 53 F.3d 1349, 1360 (1st Cir. 1995) (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988)).

A motion to dismiss must attack the facial validity of the indictment and not the government's substantive case. *See* United

Criminal No. 22-447 (RAM) 4

States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (citing United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014)). When a defendant seeks an indictment's dismissal, "courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" Ngige, 780 F.3d at 502 (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)). "In general, an indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy." Savarese, 686 F.3d at 6 (citation omitted).

Courts' reticence regarding pretrial motions to dismiss indictments extends to cases where defendants contend federal jurisdiction is lacking. *See, e.g.*, United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011). However, in the case of the MDLEA, the government has the burden of establishing United States jurisdiction over a defendant by a preponderance of the evidence. United States v. Mitchell-Hunter, 663 F.3d 45, 50, 51 n.8 (1st Cir. 2011); United States v. Matos-Luchi, 627 F.3d 1, 5 (1st Cir. 2010). Moreover, Congress has explicitly made the question of United States jurisdiction under the MDLEA a "preliminary

question[] of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a); see also United States v. Vilches-Navarrete, 523 F.3d 1, 11-12 (1st Cir. 2008).

B. **Maritime Drug Law Enforcement Act**

The MDLEA outlaws, among other things, drug trafficking on vessels that are without nationality. The MDLEA provides that "an individual may not knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" "[w]hile on board a covered vessel." 46 U.S.C. § 70503(a)(1). Next, the law defines "covered vessel" to include "a vessel subject to the jurisdiction of the United States." Id. § 70503(e)(1). The MDLEA then extends United States jurisdiction to "vessel[s] without nationality". Id. § 70502(c)(1)(A). Finally, in the provision most relevant to the case at bar, the MDLEA provides as follows:

> (1) **In general.**--In this chapter, the term "vessel without nationality" includes--
>
> > (A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed; [and]
> >
> > . . .
> >
> > (C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and

>                    unequivocally assert that the vessel is
>                    of its nationality. . . .

Id. § 70502(d)(1) (emphasis in original). This statutory list of examples of a vessel without nationality is non-exhaustive. In other words, there are instances other than those listed in § 70502(d)(1) where a vessel may be considered "without nationality" (often referred to as being "stateless"). United States v. Dávila-Reyes, 2023 WL 6519518, at *14 (1st Cir. 2023) (citing United States v. Matos-Luchi, 627 F.3d 1, 6 (1st Cir. 2010)). For example, the First Circuit has held that a vessel is stateless for purposes of the MDLEA when it flies the flag of a nation without being entitled to do so. Id.

### III. DISCUSSION

Defendants contend the terms of the MDLEA do not apply to them and that, even if the MDLEA does apply to them, it is unconstitutional. The Court addresses these arguments below.

#### A. Statutory Arguments

##### 1. MDLEA Definition of a "Vessel Without Nationality"

Defendants allege that their vessel is not a stateless vessel under the MDLEA because the master of the vessel made a claim of nationality, not registry. (Docket No. 46 at 4-7). Defendants rest

this argument on 46 U.S.C. § 70502(d)(1)(C),[1] one of the several examples of a "vessel without nationality" enumerated in the MDLEA. (*See* Docket No. 46 at 4). That subsection provides that when a vessel's master makes a claim of registry and the claimed nation of registry does not affirm "that the vessel is of its nationality," then the vessel is to be considered stateless. 46 U.S.C. § 70502(d)(1)(C). Defendants argue that § 70502(d)(1)(C) cannot apply to them because it is predicated on a claim of registry. Defendants note that the master of their vessel claimed **nationality**, not registry. Thus, they conclude, the vessel is not stateless under the MDLEA. (Docket No. 46 at 4).

Whether the terms "registry" and "nationality" should be treated interchangeably for purposes of the MDLEA is an open question in the First Circuit. A panel of the First Circuit recently concluded that the terms should be treated the same "given the [MDLEA's] legislative background, together with Congress's blending of the concepts of nationality and registry elsewhere in the MDLEA." United States v. Dávila-Reyes, 23 F.4th 153, 165-69

---

[1] Defendants also attempt to support their interpretation of the MDLEA by quoting 46 U.S.C. § 70502(e)(3), replacing each instance of the word "registry" with an ellipsis, but leaving in place the word "nationality." (Docket No. 46 at 3). This alteration of the statute's text is misleading and may violate the Model Rules of Professional Conduct, which prohibit an attorney from "mak[ing] a false statement of fact or law to a tribunal." Model Rules of Pro. Conduct r. 3.3(a)(1) & cmt. (Am. Bar Ass'n 2013) ("There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.").

Criminal No. 22-447 (RAM)                                               8

(1st Cir. 2022), *reh'g en banc granted*, *opinion withdrawn*, 38 F.4th 288 (1st Cir. 2022), *and on reh'g en banc*, 2023 WL 6519518 (1st Cir. 2023). However, that panel decision was withdrawn, and the *en banc* decision that replaced it left the question unresolved. Dávila-Reyes, 2023 WL 6519518, at *23 n.19.

This Court need not address that question, however, because the Government's indictment does not depend on § 70502(d)(1)(C). Defendants' vessel may be found to be "without nationality" apart from the examples listed in § 70502(d)(1). In United States v. Matos-Luchi, the First Circuit held that the examples of a "vessel without nationality" enumerated in § 70502(d)(1) are **not exclusive**. 627 F.3d 1, 4 (1st Cir. 2010). Rather, "when Congress used the word 'includes' in listing specific instances, it allowed for reasonable extrapolation to functionally similar instances." Id. at 7. Congress also "intended to include in section 70502(d) . . . those vessels that could be considered stateless under customary international law." Id. at 4.

One scenario where the First Circuit has found a vessel to be stateless outside of the § 70502(d)(1) examples is when a vessel claims a nationality but is unable to provide evidence to support that claim. Dávila-Reyes, 2023 WL 6519518, at *17. In Dávila-Reyes, the master of a vessel claimed orally that the vessel's nationality was Costa Rican, but, when contacted, "Costa Rica could

not confirm the vessel's registry." Id. at *16. Further, the defendants' "vessel had no registration paperwork" and "no other indicia of nationality on board." Id. Given these facts, the First Circuit held that the vessel could be stateless for purposes of the MDLEA. Id. at *16-17. The First Circuit reasoned that:

> [U]nder both [the MDLEA] and international law, '[t]he controlling question is whether at the point at which the authorities confront the vessel, it bears the insignia or papers of a national vessel or its master is prepared to make an affirmative and sustainable claim of nationality.'

Id. at *17 (emphasis in original) (quoting Matos-Luchi, 627 F.3d at 6). The court concluded that although the master of the vessel claimed Costa Rican nationality, the fact that he was not "in a position to provide evidence of it" allowed the vessel to be found stateless under the MDLEA. Id. (emphasis in original).

Here, the same reasoning applies. The *Certificate of Commander Starr* states that while "the master made a verbal claim of Dominican Republic nationality for the vessel," "[t]he vessel displayed no indicia of nationality," "the Government of the Dominican Republic denied registry of the vessel," and "U.S. law enforcement officials discovered no additional evidence of vessel nationality or registry." (Docket Nos. 46-1 at 1-2 and 48-2 at 1-

3).² Defendants do not dispute these statements, nor do they argue that other indicia of the vessel's nationality were on the vessel. Based on these facts, the Court finds that Defendants were not "in a position to provide evidence" of their vessel's nationality at the time of their interdiction. Dávila-Reyes, 2023 WL 6519518, at *17. The Court further concludes that, based on the preponderance of the evidence, the vessel in which Defendants were interdicted was without nationality for purposes of the MDLEA and that Defendants are therefore subject to the jurisdiction of the United States. *See* United States v. Sánchez-Matos, 2023 WL 5088929, at *3 (D.P.R. 2023) (finding a vessel stateless where the crew claimed Dominican Republic nationality and the Dominican Republic denied registry).

Defendants counter that an oral assertion of nationality is sufficient under the MDLEA and international law to provide "prima facie proof of nationality." (Docket No. 46 at 7 (citing Matos-Luchi, 627 F.3d at 5); *see also* id. at 17). They argue that because

---

² The Government's *Opposition* states that after boarding the vessel, "USCG personnel also recovered several items indicating the items came from the Dominican Republic." (Docket No. 48 at 3.) However, the Government's *Certificate* simultaneously states that "law enforcement officials discovered no additional evidence of vessel nationality or registry to corroborate or contradict the master's verbal claim of Dominican Republic nationality." (Docket Nos. 46-1 at 2 and 48-2 at 3). Because there is no evidence to suggest that the "several items" recovered by the USCG related to the nationality of the vessel itself, and because Defendants make no argument that they were prepared to back up with evidence the master's claim of nationality, the Government's reference to these "several items" does not dissuade the Court from its finding that Defendants' vessel is stateless.

there was an oral claim of nationality and because the Dominican Republic did not deny it, Defendants' vessel cannot be stateless. Id. at 6-7, 17-18. But this argument ignores the rule established in Matos-Luchi, subsequently clarified in Dávila-Reyes, that a vessel's crew must be prepared to provide evidence of its claimed nationality. Dávila-Reyes, 2023 WL 6519518, at *17 (quoting Matos-Luchi, 627 F.3d 1 at 6). Because "the stateless vessel concept in the MDLEA and in international law is designed *prudentially*," a *prima facie* case of nationality is not enough. Matos-Luchi, 627 F.3d at 6 (emphasis in original). There must be some way for law enforcement officials to be able to verify a vessel's nationality, and that requires actual proof. *See* id.

In this case, although the master of Defendants' vessel made an oral claim of nationality, that assertion was insufficient to establish nationality without evidence to corroborate it. The Dominican Republic denied registry of the vessel, and the USCG personnel discovered no evidence to back up the oral claim. Because Defendants could show no evidence that their vessel was "entitled to fly[] the flag" of the Dominican Republic, their vessel was stateless under international law and the MDLEA. Dávila-Reyes, 2023 WL 6519518, at *14 (alteration in original) (quoting Matos-Luchi, 627 F.3d 1 at 6).

Criminal No. 22-447 (RAM)                                                12

Defendants' citations to United States v. Potes and United States v. Maynard are ineffectual. (*See* Docket No. 46 at 5). Both cases treated the MDLEA's examples of statelessness as the sole means by which a vessel could be found stateless. *See* United States v. Potes, 880 F.2d 1475, 1478-79 (1st Cir. 1989); United States v. Maynard, 888 F.2d 918, 923-25 (1st Cir. 1989). Neither opinion considered the rule, announced 20 years later in Matos-Luchi, that a vessel may be found stateless in other instances besides those listed in the MDLEA. *See* Matos-Luchi, 627 F.3d at 4. Therefore, the reasoning in Potes and Maynard is inapplicable to this case. *Cf.* Dávila-Reyes, 2023 WL 6519518, at *18 (distinguishing Potes).

**2. Congress's Intent in Passing the MDLEA**

Apart from Defendants' argument that the MDLEA's definition of "vessel without nationality" does not apply to them, Defendants offer a broader statute-based challenge to their indictment. They posit that "Congress did not intend" for 46 U.S.C. § 70503(a)(1) and § 70506(b) to apply "where none of the five general principles of criminal jurisdiction . . . are implicated." (Docket No. 46 at 23). Defendants cite no authority for this proposition, and thus the Court rejects it. *See* L. CR. R. 112; L. CV. R. 7(a).

**B. Constitutional Arguments**

In addition to their statutory arguments, Defendants contend that the MDLEA violates international and constitutional law.

Criminal No. 22-447 (RAM)                                                    13

However, at the heart of Defendants' international law arguments is a contention about Congress's power under Article I. (*See* Docket No. 46 at 9–11). What is more, the MDLEA prohibits Defendants from challenging their charges on the basis of international law. 46 U.S.C. § 70505. The Court therefore treats those arguments as constitutional challenges. *See also* United States v. Diaz-Jaramillo, 2022 WL 17404925, at *3 (D.P.R. 2022) (noting that "the core of Defendant's argument is that . . . it violates the United States Constitution.").

Congress's authority to implement the MDLEA comes from the Define & Punish Clause in Article I of the United States Constitution. United States. v. Gutiérrez-Moreno, 615 F. Supp. 3d 97, 103 (D.P.R. 2022). That clause grants Congress authority to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Con. Art. I, § 8, cl. 10. Defendants claim that Congress's authority under this clause is limited by international law. They argue that the application of the MDLEA in this case exceeds the bounds of international law and therefore also the bounds of the Define & Punish Clause. Separately, Defendants maintain that the MDLEA violates principles of Due Process. As discussed below, none of these arguments is compelling.

**1. Section 70502(d)(1)(C)**

Defendants' chief constitutional argument concerns § 70502(d)(1)(C) of the MDLEA. That subsection, as discussed above, contains one of the MDLEA's enumerated instances of a "vessel without nationality." 46 U.S.C. § 70502(d)(1)(C). It provides that a vessel is stateless if "the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." Id. Returning to their premise that international law credits oral claims of nationality, Defendants conclude that § 70502(d)(1)(C) contravenes international law. (Docket No. 46 at 8, 10-11). They reason that treating a vessel as stateless merely because a nation has failed to confirm nationality is inconsistent with the credence international law gives to oral claims. Id. at 10. And because Defendants contend that international law limits Congress's power under the Define & Punish Clause, they conclude that § 70502(d)(1)(C) must therefore be unconstitutional. Id. at 10-11.

As with Defendants' statutory challenge to the same provision, the Court need not consider this constitutional challenge to § 70502(d)(1)(C). "[T]he indictment alleges no facts that could be understood to limit to § 70502(d)(1)(C) the permissible bases for finding the vessel in question to be 'without nationality' under § 70502(c)(1)(A)." Dávila-Reyes, 2023 WL

6519518, at *14. Nor does the indictment depend necessarily on any other instance of a "vessel without nationality" enumerated in § 70502(d)(1). As discussed above, Defendants' vessel is stateless because there is no evidence to support the claim of Dominican Republic nationality. Because § 70502(d)(1) is not essential to the Government's indictment, this Court need not decide whether the provision is constitutional. Id.; *see also* Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973).

**2. Jurisdiction Over Stateless Vessels and Their Occupants**

Alongside their challenge to § 70502(d)(1)(C), Defendants make other arguments for why the MDLEA exceeds Congress's authority under Article I. First, Defendants dispute whether international law permits United States jurisdiction over a stateless vessel to extend to the **occupants** of that vessel. (Docket No. 46 at 9 & n.1 (quoting United States v. Aybar-Ulloa, 987 F.3d 1, 17 (1st Cir. 2021) (Barron, J., concurring), *cert. denied*, 141 S. Ct. 2714 (2021))). But the case Defendants cite for this proposition, United States v. Aybar-Ulloa, held just the opposite; it explained that "the law does not distinguish between jurisdiction over the vessel itself and jurisdiction over the people on the vessel." 987 F.3d at 7.

Second, Defendants make the sweeping contention that it violates international law for the United States to exercise

criminal jurisdiction over stateless vessels. (Docket No. 46 at 10). That is incorrect. Aybar-Ulloa made clear that "prosecution in the United States for drug trafficking on a stateless vessel stopped and boarded by the United States in waters subject to the rights of navigation on the high seas violates no recognized principle of international law." 987 F.3d at 3.

### 3. Lack of Universal Jurisdiction

Defendants take aim at the MDLEA from yet another angle: They argue that the MDLEA is unconstitutional because it purports to criminalize drug trafficking even in cases where there is no nexus between the United States and the defendants. (Docket No. 46 at 11-13). Defendants argue that theirs is one such case: Dominican nationals, discovered in international waters, arrested on a Dominican vessel, with no indication that the cocaine would enter the United States. Id. at 19. Defendants contend further that their prosecution could only be constitutional if drug trafficking were a crime of "universal jurisdiction," *i.e.*, a crime that international law allows nations to enforce against anyone, no matter the defendant's connection to the enforcing state. Id. at 11-12, 19-20. Defendants claim that the only crime of universal jurisdiction is piracy. Id. at 11-12. Therefore, Defendants assert, they may not be prosecuted for drug trafficking. Id. at 19-20.

Criminal No. 22-447 (RAM)                                              17

Defendants' universal jurisdiction argument runs counter to First Circuit precedent. In Aybar-Ulloa, the First Circuit affirmed the conviction of a Dominican Republic citizen that had been charged under the MDLEA for trafficking drugs on a stateless vessel in international waters (also referred to as the "high seas"). 987 F.3d at 3. While the court recognized that drug trafficking is "not a crime that gives rise to universal jurisdiction," id. at 14, it nevertheless found the underlying prosecution to have "violate[d] no recognized principle of international law." Id. at 3. "To the contrary," the First Circuit explained, "international law accepts the criminal prosecution by the United States of persons like [the defendant], who was seized by the United States while trafficking cocaine on a stateless vessel on the high seas, just as if they were trafficking on a United States-flagged ship." Id. at 3.

Like in Aybar-Ulloa, Defendants here are foreign nationals, allegedly interdicted while trafficking drugs on a stateless vessel in international waters. (Docket Nos. 46 at 19 and 48 at 2-3). Because their alleged offenses occurred in a stateless vessel on the high seas, the crimes of which Defendants are accused in Counts One and Two fall squarely within Congress's constitutional authority to define felonies committed on the high seas. *See* United States v. Dávila-Reyes, 2023 WL 6519518, at *7 (1st Cir. 2023)

("Aybar-Ulloa relied . . . on the ground that Congress had the power under the Felonies Clause to make it a crime for a foreign national to engage in drug trafficking on the high seas while aboard a vessel that was stateless under international law.").[3] Thus, Defendants' argument regarding universal jurisdiction fails.

### 4. Due Process

Lastly, Defendants argue that the alleged lack of nexus between the United States and Defendants means that their prosecution under the MDLEA is not only beyond the bounds of Article I but also a violation of the Due Process Clause. (Docket No. 46 at 20-22). Only one of the cases that Defendants cite for this proposition involved the MDLEA, and its holding contradicts Defendants' proposition. *See* United States v. Perlaza, 439 F.3d 1149, 1161 (9th Cir. 2006) ("[I]f a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them." (quoting United States v. Moreno-Morillo, 334 F.3d 819, 829 (9th Cir. 2003))). The First Circuit has held that when defendants are charged under the MDLEA for drug offenses

---

[3] The Felonies Clause is part of the Define & Punish Clause, which contains "three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations." United States v. Bellaizac-Hurtado, 700 F.3d 1245, 1248 (11th Cir. 2012) (citing United States v. Smith, 18 U.S. (5 Wheat.) 153, 158-59 (1820)).

on a stateless vessel in international waters, the government need not show a nexus between the United States and the defendants. *See, e.g.*, United States v. Bravo, 489 F.3d 1, 4, 7 (1st Cir. 2007); Dávila-Reyes, 2023 WL 6519518, at *23. As such, Defendants' Due Process challenge fails.

### IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' *Motion to Dismiss*. (Docket No. 46).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of November 2023.

                            s/Raúl M. Arias-Marxuach
                            UNITED STATES DISTRICT JUDGE